UNITED STATES CMS COURT
WESTERN CMS OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:21-CV-00676-FDW-DCS

| | |
|---|---|
| **POPPI SWINDELL,** )<br>)<br>**Plaintiff,** )<br>) **ORDER**<br>v. )<br>)<br>**CHARLOTTE-MECKLENBURG BOARD** )<br>**OF EDUCATION,** )<br>)<br>**Defendant.** )<br>) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 49). This matter has been fully briefed, (Doc. Nos. 49-1, 58, 60, 61), and is ripe for ruling. Also before the Court is Plaintiff's "Motion for Summary Judgment," (Doc. No. 52), and "Motion to Withdraw Summary Judgment," (Doc. No. 55). For the reasons set forth below, Plaintiff's Motions are **DENIED**, and Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This lawsuit arises out of Poppi Swindell's ("Plaintiff") employment as a "Driver Trainer" for Charlotte-Mecklenburg Schools ("CMS"). The Driver Trainer position generally includes responsibility for training and evaluating prospective bus drivers. (Doc. No. 49-4, p. 2.) In early 2020, CMS experienced a shortage of bus drivers and began assigning daily bus routes to Driver Trainers, including Plaintiff.[1] On January 15, 2020, Plaintiff submitted a workplace accommodation request along with a note from Dr. Edwards-Booker stating, "Poppi Swindell should avoid prolonged sitting or standing due to his current medical condition." (Doc. No. 49-4,

---

[1] In its motion, CMS concedes this was a change in Plaintiff's job duties and reporting structure.

1

p. 12.) On January 17, 2020, CMS's accommodations analyst attempted to reach out to Plaintiff to better understand the requested accommodation. On February 3, 2020, Plaintiff informed CMS he was not requesting a formal accommodation and submitted a note from his doctor indicating his previous medical symptoms had improved, he was no longer limited in his abilities, and he could return to his "regular work duties." (Doc. No. 49-4, p. 25.)

On February 5, 2020, CMS instructed Plaintiff to report for bus driving when there were no trainees scheduled. Plaintiff reported one day in the morning and called out sick for the remainder of the week. On February 10, 2020, Plaintiff did not report to drive the bus and emailed the accommodations analyst again, stating he would not drive a bus and would be "submitting a directive from [his] doctor." (Doc. No. 49-4, p. 39.) CMS's accommodations analyst then attempted to engage with Plaintiff and Dr. Edwards-Booker to clarify what accommodations Plaintiff needed to return to work. (Doc. No. 49-4, p. 42.) On February 25, 2020, Dr. Edwards-Booker responded, stating Plaintiff was not able to perform the duties listed in his job description and was not able to perform the duties in the job description with or without reasonable accommodation. Dr. Edwards-Booker also stated Plaintiff would benefit from a fixed schedule of Monday through Friday from 7:00 AM to 4:00 PM as changes to his routine increased his anxiety. After reviewing this information, the accommodations analyst informed Plaintiff that CMS was unable to accommodate his doctor's request, as working a fixed schedule now interfered with the essential functions of his job, including driving bus routes.

On April 9, 2020, Plaintiff's new medical provider, PA-C Wendy Riley, submitted a letter to CMS, stating Plaintiff should work only between 7:00 AM and 4:00 PM, Monday through Friday, and Plaintiff should avoid early morning or substitute routes. (Doc. No. 49-4, p. 76.) On April 14, 2020, the accommodations analyst sent an email to CMS inquiring—for the sake of

2

argument—why Plaintiff's accommodation could not be honored and noting the Driver Trainer essential functions included only training prospective bus drivers and not driving regular routes. (Doc. No. 51-1, p. 5.) On April 24, 2020, CMS again denied Plaintiff's request, noting a set schedule of 7:00 AM to 4:00 PM interfered with the essential functions of Plaintiff's role as Bus Driver Trainer. (Doc. No. 56-1, p. 4.)

Plaintiff subsequently applied for and received Emergency Sick Leave, COVID-19 leave, FMLA leave, non-FMLA leave, and Short-Term Disability benefits. CMS continues to employ Plaintiff; however, the record indicates he has not returned to work in his position.

On December 20, 2021, Plaintiff filed a complaint against Defendant alleging Title VII failure to accommodate, unequal terms and conditions of employment, and retaliation. (Doc. No 1.) On April 21, 2022, Plaintiff amended his complaint against Defendant alleging disability discrimination for retaliation, in violation of the Americans with Disabilities Act of 1990 ("ADA"). (Doc. No. 8.) After consolidating this action with a related case, (Doc. No. 25), the Court subsequently granted Plaintiff's motion for leave to file another amended complaint. The Second Amended Complaint alleges claims for failure to accommodate, discrimination, retaliation, and defamation of character/libel. (Doc. No. 40.) Defendant moves for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S.

3

317, 323 (1986). Once the moving party has met its burden, the burden shifts and the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n.11 (1986) (citing Fed. R. Civ. P. 56(e)). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Id. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50. In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." Id. at 252.

### III. ANALYSIS

**A. Americans with Disabilities Act**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges or employment." 42 U.S.C. § 12112(a). Here, Defendant moves for summary judgment on Plaintiff's

claim for failure to provide a reasonable accommodation, discrimination, and retaliation in violation of the ADA. The Court will evaluate the merits of each ADA claim in turn.

**1. Failure to Accommodate**

One form of prohibited ADA discrimination is an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. § 12112(b)(5)(A). As defined by the ADA, "reasonable accommodations" can include "(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position . . . appropriate adjustment or modifications of . . . policies . . . and other similar accommodations . . . ." Id. § 12111(9). To survive summary judgment for an ADA failure to accommodate claim, a plaintiff is required to show: (1) he was disabled; (2) the employer had notice of his disability; (3) he could perform the essential functions of her position with a reasonable accommodation; and (4) the employer refused to make such accommodation. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013).

Here, the parties have presented sufficient evidence to create genuine disputes as to material facts that preclude summary judgment on this claim. For example, though disputed, Plaintiff has presented sufficient evidence tending to show he had a disability. As another example, a dispute of fact exists as to the essential functions of Plaintiff's position. A function is essential if it "bears more than a marginal relationship to the job at issue." Rohan v. Network Presentations, LLC, 375 F.3d 266, 279 (4th Cir. 2004). The ADA provides that, in any determination of a position's essential functions, "consideration shall be given to the employer's judgment." 42 U.S.C. § 12111(8). Though the ADA identifies a position's written job description as relevant to the employer's judgment, the description is not dispositive. Rather, in performing the essential

5

functions inquiry, a court must "consult the full range of evidence bearing on the employer's judgment, including the testimony of senior officials and those familiar with the daily requirements of the job." Elledge v. Lowe's Home Centers, LLC, 979 F.3d 1004, 1009 (4th Cir. 2020). Here, Defendant contends "substitute bus driving became an essential function of Plaintiff's position when, in early January 2020, CMS experienced a critical shortage of bus drivers." Id. Plaintiff, however, presented documentation indicating bus driving and work schedule flexibility were not included in the job description of Driver Trainer. (Doc. No. 51-1, p. 5.) This factual dispute must be resolved by a jury, and the Court declines to address other disputes as to material facts for the remaining elements outlined above. Accordingly, Defendant's Motion is DENIED as to Plaintiff's claim for failure to accommodate.

**2. Discrimination and Retaliation**

To survive summary judgment for an ADA discrimination claim, a plaintiff is required to provide evidence sufficient to demonstrate: "(1) he 'was a qualified individual with a disability'; (2) he suffered an adverse employment action; (3) he was fulfilling his employer's legitimate expectations at the time of the adverse employment action; and (4) the circumstances surrounding the adverse employment action 'raise a reasonable inference of unlawful discrimination.'" Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (quoting Rohan v. Networks Presentations, LLC, 375 F.3d 266, 277 n.9 (4th Cir. 2004)). To state a Title VII retaliation claim, a plaintiff must show: (1) participation in a protected activity; (2) subjection to an adverse job action; and (3) a causal connection between the activity and the adverse action. Matavia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 271 (4th Cir. 2001). Once the prima facie case is established, Defendant has an opportunity to produce evidence of a legitimate, non-discriminatory reason for terminating Plaintiff. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

(1973). The burden then shifts to Plaintiff to provide evidence that Defendant's non-discriminatory justification was merely pretext. See id. at 804.

Here, Plaintiff has failed to show any adverse action sufficient to support these claims. See, e.g., Smith v. Wormuth, No. 1:20-CV-00419-JRR, 2024 WL 1012887, at *11 (D. Md. Mar. 8, 2024) ("The denial of these accommodation requests, even if adverse, cannot independently sustain a claim for disability discrimination under the Rehabilitation Act." (collecting cases)). Plaintiff's contention that Defendant denied his requests for reasonable accommodation cannot, without more, sustain Plaintiff's disability discrimination claim. Plaintiff identifies no other adverse actions to support his discrimination and retaliation claims. Therefore, Plaintiff fails to generate a dispute of material fact on these claims. Accordingly, Defendant's Motion is GRANTED as to Plaintiff's claim for discrimination and retaliation in violation of Title VII.

**B. Defamation**

North Carolina recognizes two separate torts of defamation. The first, libel, is written, and the second, slander, is oral. Suarez v. Charlotte-Mecklenburg Schools, 123 F.Supp.2d 883, 892 (W.D.N.C. 2000). North Carolina requires the plaintiff show a defamatory and false publication. Id. Defamation per se requires charges that someone has committed an infamous crime, has an infectious disease, impeaches a person's trade or business; or subjects one to ridicule, contempt, or disgrace. Id. (quoting Aycock v. Padgett, 516 S.E.2d 907, 909 (N.C. Ct. App. 1999)). If statements are privileged in some manner, they will not be considered defamatory. Any statement made during the course of a judicial proceeding is privileged. Ramsey v. Cheek, 13 S.E. 775 (N.C. 1891). A judicial proceeding includes "every proceeding of a judicial nature before a competent court or before a tribunal or officer clothed with judicial or quasi-judicial powers." Jarman v. Offutt, 80 S.E.2d 248, 251 (N.C. 1954).

Here, Plaintiff's defamation claim arises from a quasi-judicial proceeding in which Defendant responded to Plaintiff's complaint filed with the Equal Employment Opportunity Commission ("EEOC"). Defendant's response stated "[Plaintiff used] the accommodation process as a pretextual method to get out of work." This Court finds Defendant's statement to be in the course of the EEOC proceeding as it was a direct response to the Plaintiff's complaint. Accordingly, Defendant's statement is privileged and unable to support a civil action for defamation. Therefore, Defendant's Motion is GRANTED as to Plaintiff's claim for defamation.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (Doc. No. 49), is: **DENIED IN PART** to the extent it seeks summary judgment for ADA failure to accommodate and **GRANTED IN PART** to the extent it seeks summary judgment for ADA discrimination and retaliation and for defamation.

**IT IS FURTHER ORDERED** that Plaintiff's Motions, (Doc. Nos. 52, 55), are summarily DENIED. Plaintiff has failed to show he is entitled to the relief sought under any applicable law.

**IT IS FURTHER ORDERED** that in light of this ruling, the Court hereby continues this matter to the Court's trial term beginning on September 9, 2024, with docket call to begin at 9:00 a.m. and a pretrial conference to take place immediately thereafter. In light of this trial setting, the Court directs the parties to file their jointly-prepared pretrial submissions on the docket no later than August 1, 2024. Motions in limine should also be filed by August 1, 2024, and responses shall be filed by August 8, 2024.

**IT IS SO ORDERED.** Signed: June 5, 2024

Frank D. Whitney
United States District Judge